IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>ZACHARY JAMES KRUSE,<br><br>Defendant. | No. CR 11-2019<br><br>REPORT AND<br>RECOMMENDATION |

## TABLE OF CONTENTS

I.   INTRODUCTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

II.  PROCEDURAL HISTORY. . . . . . . . . . . . . . . . . . . . . . . . . 2

III. ISSUES PRESENTED. . . . . . . . . . . . . . . . . . . . . . . . . . . 2

IV.  RELEVANT FACTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
     A.   Issuance of a Search Warrant. . . . . . . . . . . . . . . . . . 2
     B.   Execution of the Search Warrant. . . . . . . . . . . . . . . . 4
     C.   Questioning Defendant at the Jail. . . . . . . . . . . . . . . 5

V.   DISCUSSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
     A.   Was the Search Warrant Supported by Probable Cause?. . . . . . 6
     B.   Was the Search Warrant Overly Broad?. . . . . . . . . . . . . 10
     C.   Was the Search Warrant Effected By a Delay in Its Execution?. . 13
     D.   Was Defendant Denied His Sixth Amendment Right to Counsel?. . 15
     E.   Would the Leon Good Faith Exception Apply?. . . . . . . . . . 17

VI.  SUMMARY. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

VII. RECOMMENDATION. . . . . . . . . . . . . . . . . . . . . . . . . . . 19

## I. INTRODUCTION

On the 9th day of May 2011, this matter came on for hearing on the Motion to Suppress (docket number 12) filed by the Defendant on April 27, 2011. The Government was represented by Assistant United States Attorney Marti Sue Sleister. Defendant Zachary James Kruse appeared in person and was represented by his attorney, Chad R. Frese.

## II. PROCEDURAL HISTORY

On March 24, 2011, Defendant was charged by Indictment with one count of being a felon in possession of a firearm. Defendant entered a plea of not guilty, and trial was scheduled for May 31, 2011. On Defendant's motion, the trial was subsequently continued to July 5, 2011.

On April 27, 2011, Defendant timely filed the instant motion to suppress. The Government filed its resistance on May 6, 2011.

## III. ISSUES PRESENTED

Four issues are raised by Defendant in his motion to suppress: First, whether the application and affidavit support a finding of probable cause for the issuance of the search warrant; second, whether the scope of the search warrant was overly broad in permitting a search for weapons; third, whether a delay in executing the search warrant rendered it void; and fourth, whether Defendant's Sixth Amendment right to counsel was violated when he was interviewed in the jail.[1] The Government denies Defendant's claims and affirmatively asserts that the *Leon* good faith exception would apply.

## IV. RELEVANT FACTS

### A. *Issuance of a Search Warrant*

On March 4, 2010, Deputy Luke Irvin of the Mitchell County Sheriff's Office submitted an application for search warrant to a state judicial magistrate. The application

---

[1] At the time of hearing, Defendant clarified that he is *not* seeking relief under *Franks v. Delaware*, 438 U.S. 154 (1978).

2

sought authority to search an apartment located above a shoe and clothing store in Stacyville, Iowa. The application was supported by an affidavit signed by Irvin, together with two police reports (identified as Attachments A and B).[2]

In his affidavit, Deputy Irvin asserted that during the course of several months, deputies observed numerous vehicles parked in front of the clothing store in Stacyville after business hours. According to Irvin, "[s]ome of these vehicles belong to known or suspected drug users, or are known to associate with suspected drug users." Irvin averred that it was believed that the occupants of the vehicles were associating with the tenant of the apartment located at that address. Persons had been seen coming from the apartment and getting in the vehicles. There are no other known residences in the immediate vicinity of the store.

According to the affidavit, in the early morning hours of February 24, 2010, Deputy Irvin collected five bags of trash sitting on the sidewalk in front of the property. This "trash rip" is also described in Irvin's report, referred to in the affidavit as Attachment A. In searching the contents of the trash bags, Irvin discovered marijuana seeds and stems and, in a separate bag, documents with the name Zach Kruse.

The affidavit states that on March 1, 2010, at approximately 11:30 p.m., Deputy Jerry Jensen arrested Noah Juenger in Stacyville. Juenger was found in possession of marijuana and a marijuana pipe. Juenger told Jensen that he was coming from Zach Kruse's apartment, located above Bawek's Clothing. Attachment B describes the events in more detail. In his report, Jensen describes seeing a male "walking down West School St. with a 12 pack of Budweiser and an open container of alcohol." Juenger had a "strong odor of marijuana smoke about him" and marijuana was found on his person.

The affidavit next describes the events of March 3, 2010. As indicated in the affidavit and Attachment B, Deputy Jensen observed two small white garbage bags on the

---

[2] The application, affidavit, attachments, search warrant, and return were introduced into evidence at the time of hearing as Government's Exhibit 1.

sidewalk in front of Bawek's Shoe Store. A subsequent search of the bags revealed "several marijuana seeds and stems from both bags." Also found was a handwritten note to Bailey Gosen, who was previously identified by Juenger as Defendant's roommate.

Later on March 3, 2010, Jensen spoke with Glenn Cimmiyotti, the owner of Bawek's Shoe Store. Cimmiyotti told Jensen that Zachary Kruse rented the apartment above the store. While Kruse was the only tenant listed on the lease, Cimmiyotti believed that "a female named Bailey" also lived there. Cimmiyotti told Jensen that "the renters are to put their garbage on the sidewalk in front of the store for collection." The store also put their garbage on the sidewalk, but it "was usually in a box." Also, Cimmiyotti stated that "they do not put the store garbage out until the day of collection due to the animals around down."

Attachment B also asserts that Zach Kruse had been "under investigation" for several years and "is a known drug user." According to the affidavit and attachment, Kruse has been convicted in separate incidents of possession of marijuana, possession of drug paraphernalia, manufacture of marijuana (a felony), and possession of marijuana-second offense.

Finding probable cause, the judicial magistrate issued a search warrant for the property on March 4, 2010. The search warrant authorized officers to search the apartment for drugs, drug-related items, and indicia of occupancy. In addition, the search warrant specifically authorized a search for firearms and ammunition.

### B. *Execution of the Search Warrant*

Deputy Jensen testified at the instant hearing that the search warrant was executed four days later, on March 8, 2010. When asked why there was a delay in executing the warrant, Jensen responded as follows:

> We were waiting for maybe some other parties to show up at the residence, and then it turned into a manpower issue also, where we didn't have enough guys on our department there to execute the warrant, so we had to wait for some other guys to be around.

4

Jensen testified that there are only five persons in the Mitchell County Sheriff's Office. On cross-examination, Jensen acknowledged that they were "first waiting for other drug users or other drug dealers to show up at the apartment." The apartment was not under constant surveillance. According to Jensen, "it was just when a deputy would have time to go up to Stacyville and check."

Deputy Jensen testified that Defendant answered the door when the warrant was executed. There was a smell of burnt marijuana coming from the apartment and a marijuana bong was in plain view. The officers searched the entire apartment, including a locked safe (with Defendant providing the key). Drug paraphernalia was found in the safe, including pipes, tweezers, and a digital scale. Defendant's identity documents – a social security card and birth certificate – were also found in the safe. A small amount of marijuana was found in the living room. A search of Defendant's bedroom revealed a marijuana pipe hidden between his mattress and box spring.

Of significance to this action, officers also found a gun case that was "propped up in the corner" of a closet. A Romanian assault rifle was found in the case, together with several magazines loaded with ammunition. Deputy Jensen testified that he knew Defendant was a convicted felon and, therefore, could not legally possess a firearm.

### C. Questioning Defendant at the Jail

Deputy Jensen testified that Defendant was arrested while the search warrant was being executed on March 8, 2010. He was charged with possession of marijuana and possession of drug paraphernalia. He was seen by a judicial magistrate the following day, March 9, 2010. Jensen testified that he believed Defendant was appointed an attorney at his initial appearance, although he could not identify the attorney.

Following the seizure of the weapon on March 8, 2010, Deputy Beaver spoke with Peter Short, who stated that he was the owner of the rifle. Short told Beaver that he had dropped the rifle off at Defendant's residence because he was going to Mason City and

"did not want it in the trunk of his car." According to Short, he called Defendant and asked if he could keep the gun there, and Defendant agreed.

At the instant hearing, Deputy Jensen testified that they did not immediately bring state charges against Defendant for possession of a firearm as a felon, because they "wanted to run it by the federal system first to see if they would accept the case." On cross-examination, Jensen acknowledged that he wanted to speak with Defendant first, so any statements made by Defendant could also be provided to federal authorities.

On March 10, 2010, Deputy Jensen went to visit Defendant in jail. When asked by the Court whether he knew Defendant had an attorney, Jensen responded "not at that time, no." When asked if he had checked, Jensen said "no." Upon arriving at the jail, Jensen gave Defendant a *Miranda* warning and asked "if he was willing to talk with us." Defendant agreed to talk and signed a consent to waive his rights. According to Jensen, Defendant agreed to "talk to us about the firearm."

Defendant told Deputy Jensen that Short had called him prior to the execution of the search warrant and asked "if he could keep the gun there for a short time." According to Defendant, he was not home when Short dropped the rifle off, "but he did give him permission to put the rifle in that apartment."

## V. DISCUSSION

### A. Was the Search Warrant Supported by Probable Cause?

First, Defendant argues that the search warrant issued by the judicial magistrate was not supported by probable cause. Defendant complains that "what is missing from the search warrant affidavit is any discussion concerning the quantity of seeds and stems found" in the "trash tips."[3] Defendant argues that "the quantity of seeds and stems would be critical to the probable cause analysis."[4] Defendant also argues that information

---

[3] *See* Defendant's Brief (docket number 12-1) at 2.

[4] *See* Motion to Suppress (docket number 12) at 2, ¶ 5.

regarding his four prior drug convictions is "too remote and stale to be considered in the probable cause analysis."[5]

The Fourth Amendment to the United States Constitution protects persons and their houses against unreasonable searches and seizures. "[N]o Warrants shall issue, but upon probable cause, supported by Oath or affirmation." U.S. CONST. AMEND. IV. In making a probable cause determination, "[t]he task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983). Stated otherwise:

> If an affidavit in support of a Search Warrant "sets forth sufficient facts to lead a prudent person to believe that there is a 'fair probability that contraband or evidence of a crime will be found in a particular place,'" probable cause to issue the warrant has been established.

*United States v. Grant*, 490 F.3d 627, 631 (8th Cir. 2007) (quoting *United States v. Warford*, 439 F.3d 836, 841 (8th Cir. 2006)). Probable cause "is a fluid concept that focuses on 'the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.'" *United States v. Colbert*, 605 F.3d 573, 577 (8th Cir. 2010) (quoting *Gates*, 462 U.S. at 231). As such, the Court examines the sufficiency of a search warrant affidavit using a "common sense" and not a "hypertechnical" approach. *Grant*, 490 F.3d at 632 (citing *United States v. Solomon*, 432 F.3d 824, 827 (8th Cir. 2005)). The totality of the circumstances is considered in determining whether probable cause was established to issue a search warrant. *Id.* at 631 (citation omitted).

---

[5] *See* Defendant's Brief (docket number 12-1) at 3.

In this case, no oral testimony was presented to the judicial officer when the search warrant was issued. When an issuing judge relies solely on the written application to issue a search warrant, "only that information which is found within the four corners of the affidavit may be considered in determining the existence of probable cause." *Solomon*, 432 F.3d at 827. Here, Deputy Irvin's affidavit advised the judicial magistrate of the following: (1) during the prior months, deputies had witnessed numerous vehicles in front of Defendant's apartment after business hours; (2) some of the vehicles belonged to known or suspected drug users; (3) persons coming from Defendant's apartment were seen getting into the vehicles; (4) on February 24, 2010, a trash rip in front of Defendant's apartment yielded marijuana seeds and stems, together with documents identifying Defendant; (5) on March 1, 2010, a person walking near Defendant's apartment was approached by a deputy for having an open container of alcohol. The person had a strong odor of marijuana smoke about him, and marijuana and a marijuana pipe was found on his person. The subject said he had just come from Defendant's apartment; (6) on March 3, 2010, a second trash rip revealed additional marijuana seeds and steps, with a handwritten note to a person identified as Defendant's roommate; (7) later the same day, the owner of the property identified Defendant as the tenant of the apartment; (8) the property owner told law enforcement that the renters are instructed to put their garbage on the sidewalk in front of the building; (9) Defendant had been under investigation for several years and is a known drug user; and (10) Defendant has four prior drug-related convictions, with the last conviction approximately 2-1/2 years earlier.

In support of his argument, Defendant cites *United States v. Johnson*, 461 F.2d 285 (10th Cir. 1972). Defendant's reliance on *Johnson* is somewhat surprising. First, as a Tenth Circuit case, it has no precedential effect here. Second, the Defendant in *Johnson* argued that probable cause was lacking for the issuance of a search warrant because the "activities" giving rise to probable cause occurred at least three weeks prior to submission of the affidavit. While noting that the issuing magistrate must bear in mind "both the

element of time and the nature of the facts relied upon in the affidavit," the Court concluded that the facts submitted in support of the warrant "were more than ample." *Id.* at 287. Turning to the facts in the instant action, law enforcement found evidence of drug usage in Defendant's trash two weeks in a row, with the second trash rip occurring *one day* prior to the application for the warrant.

The only other case cited by Defendant on this issue was *United States v. Harris*, 403 U.S. 573 (1971). There, the Court discussed whether statements made by a confidential informant were sufficient to establish probable cause for the issuance of a search warrant. In a case which pre-dated *Gates*, the Court analyzed the issue under the two-prong test of *Aguilar* and *Spinelli*.[6] Probable cause in the instant action does not rely on information provided by a confidential informant, and *Harris* would seem to have very little application to this case.

Defendant seems to be under a misapprehension that in order to justify a search warrant, the affidavit must establish probable cause of drug *dealing*.[7] In fact, the affidavit must only set forth sufficient facts to lead a prudent person to believe that there is a "fair probability that contraband or evidence of a crime" will be found at the place to be searched. *Grant*, 490 F.3d at 631; *Warford*, 439 F.3d at 841. Obviously, possession of marijuana is a crime, albeit a misdemeanor. The affidavit in this case need only establish

---

[6] *See Aguilar v. Texas*, 378 U.S. 108 (1964), and *Spinelli v. United States*, 393 U.S. 410 (1969).

[7] In his motion, Defendant states:

> The applying officer does note in the search warrant affidavit that he was of the belief that controlled substances were being used in the residence. No mention of distribution or dealing of controlled substances is mentioned in the search warrant affidavit.

Motion to Suppress Evidence (docket number 12) at 1, ¶ 4.

probable cause to believe that a search of Defendant's residence would yield marijuana or evidence of marijuana use.

For two weeks in a row, law enforcement found evidence of marijuana use in Defendant's trash, with the last find being one day prior to the search warrant application. Known drug users were seen coming and going from Defendant's apartment. A person stopped on the street two days earlier smelled of marijuana, had marijuana on his person, and told officers that he had just come from Defendant's apartment. Defendant had four prior convictions for drug-related offenses and was a "known drug user."[8] When considering the totality of the circumstances in a commonsense, practical way, the Court believes that the affidavit would lead a prudent person to believe that there was a fair probability that marijuana or evidence of drug usage would be found in Defendant's apartment. *Gates*, 462 U.S. at 238; *Grant*, 490 F.3d at 631. Accordingly, probable cause existed for issuing of the search warrant.

### B. Was the Search Warrant Overly Broad?

The second issue raised by Defendant in his motion is that the warrant was overbroad, in that it should not have included authorization to search for a firearm. It should be noted that while Defendant identifies this as an issue in his motion and brief, he does not cite any authority in support of his argument. Because the issue was not briefed,

---

[8] At the time of hearing, Defendant abandoned any *Franks* claim that may otherwise have been included in his motion. Accordingly, while the affidavit is silent regarding how law enforcement knew that Defendant was a drug user, the Court assumes the truth of the allegation. The issuing magistrate was also entitled to assume the allegation – made under oath – was true. Standing alone, the bald assertion that Defendant is a known drug user may not be sufficient to establish probable cause. It is, however, a fact which must be included in considering the totality of the circumstances.

it may be considered waived.[9]  Nonetheless, to assist the district court, the Court will review the issue.

The Fourth Amendment provides that "no Warrants shall issue, but upon probable cause." Such probable cause must be established by oath or affirmation "particularly describing the place to be searched, and the persons or things to be seized." Here, the search warrant describes with particularity the things to be seized, including firearms and ammunition. Defendant asserts that the application and supporting affidavit do not establish probable cause to believe that firearms or ammunition would likely be found in Defendant's apartment. What Defendant fails to address, however, is how that fact would effect the admissibility of evidence in this case.

Even if that part of the warrant authorizing a search for firearms was not supported by probable cause, suppression of the evidence is not required. As set forth above, the search warrant lawfully authorized officers to search for drugs. In conducting the search, officers were authorized to look any place where drugs could be found. *United States v. Weinbender*, 109 F.3d 1327, 1329 (8th Cir. 1997) ("A lawful search extends to all areas and containers in which the object of the search may be found."). Thus, officers were entitled to search the closet where the gun case was found and to search the gun case itself.[10]

---

[9] *See Ramirez v. Debs-Elias*, 407 F.3d 444, 447 n.3 (1st Cir. 2005) (cited with approval in *United States v. Johnson*, 403 F. Supp. 2d 721, 764 (N.D. Iowa 2005)). *See also* Local Rule 7.d (requiring the movant to provide a brief containing "citations to the authorities upon which the moving party relies"); *Chay-Velasquez v. Ashcroft*, 367 F.3d 751, 756 (8th Cir. 2004) ("Since there was no meaningful argument on this claim in his opening brief, it is waived.").

[10] Defendant argues that because a canine which had been called to the apartment did not alert on the closet, authorities were precluded from searching further in that location. Defendant's counsel conceded that he had no authority in support of that novel argument, and the Court gives it no further consideration.

When the officers discovered the assault rifle, its incriminating nature was immediately apparent. Officers knew that Defendant was a convicted felon and, therefore, prohibited from possessing a firearm. The Government argues that even if the warrant was overbroad in its scope, the plain view doctrine would nonetheless permit the introduction of the firearm at the time of trial. The plain view doctrine in this context was recently described by the Eighth Circuit Court of Appeals as follows:

> The plain view doctrine "allows a police officer to seize evidence without a warrant when (1) the officer did not violate the Fourth Amendment in arriving at the place from which the evidence could be plainly viewed, (2) the object's incriminating character is immediately apparent, and (3) the officer has a lawful right of access to the object itself." The discovery of evidence under the plain view doctrine need not be inadvertent. If an officer has a valid warrant for one item and only a suspicion that another is in the same place, the discovery of the second item is not invalidated if it is found in plain view while looking for the first item.

*United States v. Abumayyaleh*, 530 F.3d 641, 648 (8th Cir. 2008) (internal citations omitted). In *Abumayyaleh*, a search warrant was issued to look for stolen property. During the search, authorities found weapons. The defendant argued that the search warrant was "a pretext to look for firearms" and the police should not be able to use the plain view doctrine. *Id.* The Court rejected the defendant's argument, finding that "[w]hether officers suspected Abumayyaleh had other weapons and whether they waited to execute the warrant until he bought a firearm from the informant does not affect the reasonableness and constitutionality of the search warrant." *Id.*

Turning to the facts in the instant action, the application and supporting affidavit established probable cause to search for drugs and related items. Accordingly, officers were authorized to enter Defendant's apartment and search any place where drugs could be found. *United States v. Nichols*, 344 F.3d 793, 798-99 (8th Cir. 2003) (firearms found under the defendant's mattress were not subject to suppression, even though the search warrant did not authorize the officers to look for firearms). Accordingly, even *if* the

search warrant in the instant action was overly broad in permitting a search for firearms, the firearm found by officers while searching for drugs would be nonetheless admissible. *See also United States v. Johnson*, 707 F.2d 317, 322 (8th Cir. 1983) (firearms which were "hidden" were nonetheless admissible under the plain view doctrine, when they were discovered by an officer who had the right to search in that location).

### C. Was the Search Warrant Effected By a Delay in Its Execution?

In his motion to suppress, Defendant notes that the search warrant was not executed until four days after it was issued, and asserts that "[p]robable cause, even if it is said to exist on March 4, 2010 had dwindled and was no longer existent 4 days later given the small quantity of marijuana seeds and stems seized from in front of Defendant's residence."[11]

The only case cited by Defendant in support of his argument is a district court case from New Jersey. In *United States v. Nilsen*, 482 F. Supp. 1335 (D.N.J. 1980), two different United States magistrate judges issued a total of seventeen search warrants. Focusing on the search warrant of his home, Defendant argued that the supporting affidavit was "grounded upon stale, dated information." *Id.* at 1338. The case did *not* address an argument that probable cause dissipated between the issuance of the warrant and the execution of the warrant.

In responding to Defendant's argument, the Government cites *United States v. Shegog*, 787 F.2d 420 (8th Cir. 1986). There, officers obtained a state search warrant based on information that PCP could be found in the defendant's house. After the search warrant was issued, however, the informant advised the detectives that the defendant "was out of PCP but was expecting more to come in." *Id.* at 421. Based on the new information, the officers "decided not to execute the search warrant immediately but to wait until the PCP had been delivered." *Id.* Eight days later, the informant told the officers that the PCP had arrived, and the officers then immediately executed the search

---

[11] *See* Motion to Suppress (docket number 12) at 3, ¶ 9.

warrant. The defendant argued that the delay between the issuance and execution of the search warrant "was unreasonable and invalidated the search."

In rejecting the defendant's argument, the Court noted that "search warrants are to be executed 'promptly.'" *Id.* at 422. However, "[t]imeliness of execution should not be determined by means of a mechanical test with regard to the number of days from issuance, nor whether any cause for delay was per se reasonable or unreasonable. Rather, it should be functionally measured in terms of *whether probable cause still existed at the time the warrant was executed.*" *Id.* (quoting *United States v. Bedford*, 519 F.2d 650, 655 (3d Cir. 1975)) (emphasis in original). "Whether the period of delay between the issuance and execution of a warrant is reasonable necessarily depends upon the facts and circumstances of each case." *United States v. Williams*, 10 F.3d 590, 594 (8th Cir. 1993).

In the instant action, officers believed that evidence of drug usage would be found in Defendant's apartment. The affidavit states that known drug users had been seen coming and going from Defendant's apartment for several months. Defendant was a known drug user and has four prior convictions for drug-related offenses. Evidence of drug usage was found in Defendant's trash during two consecutive weeks, with the last find being the day prior to the issuance of the search warrant. Given the nature of the allegations, if probable cause existed on March 4, then it also existed on March 8. *See United States v. Simpkins*, 914 F.2d 1054, 1059 (8th Cir. 1990) ("In determining whether probable cause dissipated over time, a court must 'evaluate the nature of the criminal activity and the kind of property for which authorization to search is sought.'") (quoting *United States v. Foster*, 711 F.2d 871, 878 (9th Cir. 1983)). *See also United States v. Tenerelli*, 614 F.3d 764, 770 (8th Cir. 2010).

In summary, the Court has concluded that the application and supporting affidavit established probable cause to believe that marijuana or evidence of drug usage would be found at Defendant's apartment on March 4, 2010. For the same reasons, the Court concludes that there was probable cause to believe that the contraband would also be found

there four days later. Accordingly, the four-day delay in its execution did not invalidate the warrant.

### D. Was Defendant Denied His Sixth Amendment Right to Counsel?

Finally, Defendant argues that his Sixth Amendment right to counsel was violated when Deputy Jensen interviewed him at the jail on March 10, 2010. The Government asserts that the argument should be rejected "because there is no requirement Defendant charged in violation of state law be represented by counsel on a separate federal gun investigation."[12]

In support of his argument, Defendant cites *Michigan v. Jackson*, 475 U.S. 412 (1986), for the proposition that "[a]fter the right to counsel has attached pursuant to the Sixth Amendment, the government cannot reinitiate conversation with a defendant unless the defendant initiates the conversation and voluntarily waives his right to counsel."[13] What Defendant failed to recognize, however, is that *Jackson* was specifically overruled by the Court in *Montejo v. Louisiana*, ____ U.S. ____, 129 S. Ct. 2079 (2009). In *Montejo*, the Court concluded even after counsel is appointed, a defendant may voluntarily waive his Sixth Amendment right to counsel and speak with authorities.

> Under our precedents, once the adversary judicial process has been initiated, the Sixth Amendment guarantees a defendant the right to have counsel present at all "critical" stages of the criminal proceedings. Interrogation by the State is such a stage.
>
> Our precedents also place beyond doubt that the Sixth Amendment right to counsel may be waived by a defendant, so long as relinquishment of the right is voluntary, knowing, and intelligent. The defendant may waive the right whether or not he is already represented by counsel; the decision to waive need not itself be counseled. And when a defendant is read

---

[12] *See* Government's Memorandum (docket number 17-1) at 15.

[13] *See* Defendant's Brief (docket number 12-1) at 4.

his *Miranda* rights (which include the right to have counsel
present during interrogation) and agrees to waive those rights,
that typically does the trick, even though the *Miranda* rights
purportedly have their source in the *Fifth* Amendment.

*Montejo*, 129 S. Ct. at 2085.

Here, the record is imprecise regarding whether Defendant was appointed counsel at his initial appearance on May 9, 2010. Pursuant to the holding in *Montejo*, however, it makes no difference. That is, even if Defendant was already represented by counsel when questioned by Deputy Jensen at the jail, he could nonetheless waive that right if it was "voluntary, knowing, and intelligent." *Id.*

It is noteworthy that Defendant does *not* claim that his waiver of counsel was coerced, or that his statements made at the jail were involuntary. Defendant does not dispute Deputy Jensen's testimony that Defendant was read a *Miranda* warning prior to the interrogation, and then agreed to speak with the officers. Generally, the reading of a *Miranda* warning sufficiently apprises an accused "of the nature of his Sixth Amendment rights, and of the consequences of abandoning those rights, so that his waiver on this basis will be considered a knowing and intelligent one." *Patterson v. Illinois*, 487 U.S. 285, 296 (1988) (cited with approval in *Montejo*, 129 S. Ct. at 2085).

Accordingly, while law enforcement officers have historically been trained not to approach defendants who are represented by counsel, officers are not constitutionally prohibited from approaching represented defendants and seeking their agreement to speak with the officers.[14] While agreeing to speak with officers necessarily requires a waiver of the defendant's Sixth Amendment right to counsel, such a waiver is permitted if made voluntarily, knowingly, and intelligently. In this case, Defendant was advised of his

---

[14] "If a State *wishes* to abstain from requesting interviews with represented defendants when counsel is not present, it obviously may continue to do so." *Montejo*, 129 S. Ct. at 2089.

*Miranda* rights, including the right to counsel, and then signed a waiver of those rights, agreeing to speak with the officers. There was no constitutional violation.

### E. Would the Leon Good Faith Exception Apply?

The Government also argues that the good faith exception found in *United States v. Leon*, 468 U.S. 897 (1984), is applicable in this case. For the reasons set forth above, I believe that it is unnecessary for the district court to address the good faith exception, since there existed probable cause for the search warrant. Nonetheless, I will address the issue in case the district court disagrees with my analysis on probable cause.

The good faith exception provides that disputed evidence will be admitted if it was objectively reasonable for the officer executing a search warrant to have relied in good faith on the judge's determination that there was probable cause to issue the warrant. *Leon*, 468 U.S. at 922. The Government may not rely on the good faith exception, however, if one of four circumstances are present.

> The Supreme Court has identified four circumstances in which an officer's reliance on a search warrant would be objectively unreasonable: (1) when the affidavit or testimony in support of the warrant included a false statement made knowingly and intentionally or with reckless disregard for its truth, thus misleading the issuing judge; (2) when the judge "wholly abandoned his judicial role" in issuing the warrant; (3) when the affidavit in support of the warrant was "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable;" and (4) when the warrant is "so facially deficient" that the executing officer could not reasonably presume the warrant to be valid.

*Grant*, 490 F.3d at 632-633 (citing *Leon*, 468 U.S. at 923).

Defendant did not file a reply to the Government's argument that the good faith exception in *Leon* applies to the execution of the March 4 search warrant at Defendant's apartment. Accordingly, the Court is left to speculate as to the reasons why Defendant may believe that the good faith exception in *Leon* is inapplicable. Because Defendant abandoned his *Franks* claim, however, the Court assumes that the first alternative is not

being asserted. In addition, there is no evidence in the record that the issuing magistrate "wholly abandoned his judicial role," thereby precluding Defendant from prevailing on the second alternative. Furthermore, Defendant does not point to any "facial deficiencies" in the warrant and, therefore, the fourth alternative does not apply.

The only possible alternative which may be cited in support of Defendant's position is the third one. That is, the Defendant could presumably argue – although he did not do so here – that the affidavit submitted in support of the warrant was "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable."

For the reasons set forth above, I believe that the affidavit established probable cause to search Defendant's apartment for marijuana and evidence of marijuana use. Even if the Court finds that probable cause was lacking, however, it was not "so lacking" that the officers' reliance on the search warrant was "entirely unreasonable." *United States v. Gibson*, 928 F.2d 250, 253 (8th Cir. 1991) ("Ordinarily, a police officer cannot be expected to question a judge's probable cause determination.").

## *VI. SUMMARY*

In summary, I believe that the search warrant issued on March 4, 2010 was supported by probable cause. Even if the warrant was overly broad by authorizing a search for firearms and ammunition, it would have no effect in this case. That is, in searching for drugs, the assault rifle was in plain view and its incriminating nature was apparent because the officers knew Defendant was a convicted felon. The four-day delay between the issuance of the warrant and the execution of the warrant did not dissipate the probable cause to search, and the warrant was not invalidated by the delay. Since Defendant voluntarily waived his right to counsel after being given a *Miranda* warning, the officers' interrogation of Defendant at the jail was not violative of the Sixth Amendment. Finally, even if the search warrant was not supported by probable cause, the *Leon* good faith exception precludes application of the exclusionary rule. Therefore, Defendant's motion to suppress should be denied.

## VII. RECOMMENDATION

For the reasons set forth above, it is respectfully recommended that the Motion to Suppress (docket number 12) filed by the Defendant be **DENIED**.

The parties are advised, pursuant to 28 U.S.C. § 636(b)(1), that within fourteen (14) days after being served with a copy of this Report and Recommendation, any party may serve and file written objections with the district court. *The parties are reminded that pursuant to Local Rule 72.1, "[a] party asserting such objections must arrange promptly for a transcription of all portions of the record the district court judge will need to rule on the objections." Accordingly, if the parties are going to object to this Report and Recommendation, they must promptly order a transcript of the hearing held on 9th day of May, 2011.*

DATED this 16th day of May, 2011.

_____
JON STUART SCOLES
UNITED STATES MAGISTRATE JUDGE
NORTHERN DISTRICT OF IOWA